J. A15004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DIANE SCOTT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 2237 EDA 2015 |
| ATLANTA RESTAURANT PARTNERS, | : | |
| LLC, T/A/D/B/A T.G.I. FRIDAY'S | : | |

Appeal from the Judgment Entered July 14, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. 140202800

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 06, 2016**

Diane Scott appeals the judgment entered by the Court of Common Pleas of Philadelphia County after a non-jury trial in favor of Atlanta Restaurant Partners, LLC, T/A/D/B/A T.G.I. FRIDAY'S and against appellant.

The facts as recounted by the trial court are as follows:

> On October 12, 2012, Appellant, accompanied by her two daughters and granddaughter decided to go to dinner at the T.G.I. Friday's located on City Line Avenue, Philadelphia, PA which is owned and operated by [appellee].  The dinner was to celebrate that Appellant was finally feeling good following surgery for a blood clot and subsequent physical therapy.  Upon entering the restaurant along with her granddaughter, she took a couple of steps and tripped over a floor rug reinjuring the nearly healed leg and injuring other parts of her body.  Appellant claimed the rug had some bump in it that was almost 3-4 inches high and this caused her to trip and fall. Appellant's daughter, Era Scott, did not witness the

accident itself but entered the restaurant shortly thereafter. She saw a ridge no more than 2 inches high and a couple of other puckers.

Unidentified non-employee individuals ministered [to] the Appellant following the fall. An ambulance arrived 10-15 minutes after the accident and it took Appellant to Lankenau Hospital where she was examined by staff and given certain medical tests.

Trial court opinion, 10/7/15 at 2 (citations to record omitted).

The trial court further explained:

[Appellant] brought this action which arose from a slip and fall taking place [in] [appellee's] restaurant on October 12, 2012. Relevantly, [appellant] alleged in a motion in limine due to spoliation of evidence from the [appellee's] destruction of pertinent videotape containing video of the rug upon which the Appellant tripped and adjacent area, prior to and at the time of the accident. Appell[ant] unsuccessfully argued for a sanction against [appellee] of either judgment against [appellee] or [appellee] had notice of the defect. This court rejected [appellant's] proposed alternatives and instead, imposed a sanction of an adverse inference that there was a defect and [appellee] was therefore responsible for the injury.

*Id.* at 1.

Following the verdict, appellant moved for post-trial relief. On July 13, 2015, the trial court denied the post-trial motions. This timely appeal followed.

Appellant raises the following issues for this court's review:

I.     Did the trial court err by refusing to enter judgment against [appellee] on the issue of

- 2 -

liability, as a sanction for [appellee's] flagrant spoliation of evidence?

II. Even given the trial court's ruling granting only an adverse inference due to [appellee's] spoliation of evidence, did that inference, when taken together with other evidence of record, including the testimony of [appellee's] own witnesses, entitle [appellant] to judgment as a matter of law on the issue of liability?

III. Did the trial court err in failing to vacate the verdict for [appellee] as against the weight of the evidence?

Appellant's brief at 3.

Initially, appellant contends that the trial court erred when it refused to enter judgment against appellee on the issue of liability due to appellee's flagrant spoliation of the evidence.

"When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion." *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263, 1269 (Pa.Super. 2001) (citing *Croydon Plastics Co. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa.Super. 1997) (recognizing that "[t]he decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court")). Such sanctions arise out of "the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy [the evidence]." *Mount Olivet*, 781 A.2d at 1269 (quoting *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)). Our courts have recognized accordingly that one potential remedy for the loss or destruction of

evidence by the party controlling it is to allow the jury to apply its common sense and draw an "adverse inference" against that party. **See Schroeder v. Commonwealth of Pa., Dep't of Transp.**, 551 Pa. 243, 710 A.2d 23, 28 (1998). Although award of summary judgment against the offending party remains an option in some cases, its severity makes it an inappropriate remedy for all but the most egregious conduct. **See Tenaglia v. Proctor & Gamble, Inc.**, 737 A.2d 306, 308 (Pa.Super. 1999) ("[S]ummary judgment is not mandatory simply because the plaintiff bears some degree of fault for the failure to preserve the product.").

**Creazzo v. Medtronic, Inc.**, 903 A.2d 24, 28-29 (Pa.Super. 2006).

> To determine the appropriate sanction for spoliation, the trial court must weigh three factors:
>
> > (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.
>
> **Mount Olivet**, 781 A.2d at 1269-70 (quoting **Schmid v. Milwaukee Elec. Tool Corp.**, 13 F.3d 76, 79 (3d Cir.1994)). In this context, evaluation of the first prong, "the fault of the party who altered or destroyed the evidence," requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith. **See Mt. Olivet**, 781 A.2d at 1270. The duty prong, in turn, is established where: "(1) the plaintiff knows that litigation against the defendants is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendants." **Id.** at 1270-71.

*Creazzo*, 903 A.2d at 29.

Here, the evidence in question was the tape produced by the video surveillance system that was used to film the entrance to the restaurant where appellant slipped. Michael Rogers ("Rogers"), the general manager of the restaurant, testified that due to the way the video system operated, the surveillance record would be overwritten in approximately seven to nine days. (Notes of testimony, 3/12/15 at 400-401.) Rogers did not view the video, though the manager on duty, Teresa Burnham ("Burnham"), apparently did and may have preserved a copy of the footage on her own cell phone. At the time of trial, Burnham no longer worked for appellee and could not be located. (*Id.* at 421-422.)

In her argument, appellant asserts that she satisfied the three prongs of the *Mount Olivet* test. First, she argues that the fault was entirely on the part of appellee. Appellant, her daughters, and her granddaughter were business invitees and did not have any knowledge of the video and did not have any way to preserve it. On the other hand, Rogers had seven to nine days to copy the relevant video footage onto a more durable format or possibly to download the footage from Burnham's cell phone. Rogers testified that appellee had no company policy regarding the surveillance of the premises and that the reason for the surveillance cameras was to deter theft and robberies. (*Id.* at 400-401.) However, Rogers explained that the surveillance video would not depict the rug which allegedly caused appellant

to fall because it was designed to view the faces of people who came into the restaurant and later robbed it. (***Id.*** at 506.)

The trial court determined that appellant was entitled to an adverse inference; so therefore, the trial court found that there was fault on the part of the appellee in destroying the evidence and that it was foreseeable that the destruction of the evidence would be prejudicial to appellee. While the entry of summary judgment is permitted as a sanction in spoliation cases, the severity of this sanction makes it an inappropriate remedy in all but the most egregious cases. ***See Tenaglia v. Proctor & Gamble, Inc.***, 737 A.2d 306, 308 (Pa.Super. 1999).

For instance, in ***Parr v. Ford Motor Co.***, 109 A.3d 682 (Pa.Super. 2014), ***appeal denied***, 123 A.3d 331 (Pa. 2015), ***cert. denied***, 136 S.Ct. 557 (2015), Joseph and April Parr owned a 2001 Ford Excursion which they purchased used in 2007. On July 21, 2009, a van ran a stop sign and struck the Ford Excursion which caused it to spin clockwise, hit a guardrail, and roll down a 19-foot embankment. Joseph Parr was driving the Excursion. His wife, April Parr, their three children, and Joseph Parr's mother were also in the vehicle. Some of the occupants sustained only minor injuries. However, Samantha Parr, a daughter, sustained a fractured skull, broken collarbone, fractured eye orbital, a lacerated liver, and facial lacerations. April Parr suffered a spinal cord injury such that she was quadriplegic. ***Id.*** at 686-687.

Emergency responders were forced to use the jaws of life to extract April Parr from the vehicle. That process destroyed the roof and pillar structures of the vehicle. Shortly thereafter, the Excursion was released to the Parr's insurer. The Excursion was then sold and destroyed. The Parrs commenced an action against Ford Motor Company and the car dealer who sold them the Excursion and alleged that the injuries suffered by April and Samantha Parr were the result of the crushing of the roof when it rolled down the embankment. The Parrs alleged that the roof and restraint system were defectively designed and alleged other claims based in negligence. Following a trial, the jury returned a verdict against the Parrs in the Court of Common Pleas of Philadelphia County. *Id.* The Parrs appealed to this court, which affirmed. *Parr v. Ford Motor Company*, No. 2793 EDA 2012, unpublished memorandum (Pa.Super. filed December 24, 2013). The Parrs moved for reargument, which this court granted. *Parr*, 109 A.3d at 687.

One of the issues raised by the Parrs was that the Court of Common Pleas of Philadelphia County erred and abused its discretion when it denied the Parrs' motion *in limine* to preclude Ford Motor Company from presenting evidence that the Excursion was not preserved and obtaining a spoliation charge. The Parrs argued that the trial court erred when it presented a spoliation charge to the jury and permitted the introduction of spoliation evidence where Ford Motor Company was unable to show any prejudice that resulted from the destruction of the Excursion. Ford asserted

that the jury could infer that the Excursion contained evidence unfavorable to the Parrs who failed to preserve the vehicle. Ford argued that its inability to examine the Excursion negatively impacted the analyses by their experts. The Court of Common Pleas of Philadelphia County issued a permissive adverse inference instruction to the jury that it could draw a negative inference against the Parrs from the destruction of the Excursion. *Id.* at 700-701.

This court determined that the Parrs were aware the Excursion could be used as evidence and that the destruction of the Excursion prejudiced Ford Motor Company. Ford Motor Company had sought a grant of summary judgment by the Court of Common Pleas of Philadelphia County as a sanction for the spoliation of evidence. This court determined that that was a very extreme measure and concluded that the Court of Common Pleas of Philadelphia County did not abuse its discretion when it issued the lesser permissive adverse inference instruction. *Id.* at 703-704.

Here, the trial court also issued an adverse inference instruction to itself as there was no jury. The destruction of the Excursion in *Parr* was potentially much more prejudicial to Ford Motor Company than the destruction of the surveillance videotape was here. Given that this court determined in *Parr* that there was no abuse of discretion when an adverse inference was issued rather than summary judgment, this court concludes that the trial court did not commit an abuse of discretion when it sanctioned

appellee with an adverse inference rather than a harsher penalty favored by appellant.

Turning to the next prong, appellant argues that it is plain that the lack of video surveillance seriously prejudiced her from presenting her case. The Restatement (Second) of Torts § 343 defines the duty that a possessor of property owes to a business invitee as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:
>
> (a)    knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and
>
> (b)    should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c)    fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

Appellant argues that, under her theory of the case, the mat or rug in appellee's entranceway was seriously defective and presented an unreasonable tripping hazard. Appellant also alleged that the hazard could not be remedied without removing the mat. She believes that the video would have corroborated her theory and would help make her testimony appear more credible in the face of cross-examination which was designed to create doubts as to whether her fall was caused by the condition of the mat

and was instead caused by her own physical condition. According to appellant, the video surveillance record would have clearly settled the issues of whether appellant tripped on the mat, whether the entranceway was brightly lit or dark, and whether appellant was entering or leaving the restaurant. Similarly, appellant argues that the surveillance video would establish that appellee had constructive notice of the defective mat. When attempting to establish constructive notice, a plaintiff does not have to produce testimony as to how long a defect existed if "(1) the defect is of a type with an inherently sustained duration, as opposed to a transitory spill which could have occurred an instant before the accident; and (2) a witness saw the defect immediately before or after the accident." ***Neve v. Insalaco's***, 771 A.2d 786, 791 (Pa.Super. 2001). While there was conflicting evidence from the two sides concerning the condition of the mat, appellant argues that the surveillance video would have recorded a woman clad in Muslim garb attempting to get the mat to lie flat after appellant fell. This video would have shown that the defect in the mat was of a type with an inherently sustained duration as opposed to a transitory condition caused by foot traffic in the foyer.

While this court agrees that appellant may have suffered some prejudice as a result of the spoliation of this evidence, this court is not persuaded that the trial court abused its discretion when it granted an adverse inference as opposed to a more severe sanction favored by

appellant. Once again looking to *Parr*, this court determined that Ford Motor Company was clearly prejudiced by the destruction of the Excursion because multiple expert witnesses stated that their analyses would have been greatly aided had they been able to examine the Excursion. Even with this great prejudice, the court found no abuse of discretion when the Court of Common Pleas of Philadelphia County issued only a permissive adverse inference. *Parr*, 109 A.3d at 703-704. Here, where Rogers testified that the surveillance video would not have shown the mat itself, this court concludes that the prejudice was less than that suffered in *Parr* where this court found no abuse of discretion for the imposition of an adverse inference. Consequently, this court concludes there was no abuse of discretion based on the prejudice suffered here.

As to the third prong of *Mount Olivet*, appellant argues that the adoption of the limited adverse inference imposed by the trial court did not measure up to the seriousness of appellee's failure to preserve the video surveillance evidence. Appellant argues that the seriousness of this action required the trial judge to enter judgment in appellant's favor as a matter of law. While the entry of summary judgment is permitted as a sanction in spoliation cases, the severity of this sanction makes it an inappropriate remedy in all but the most egregious cases. *See Tenaglia v. Proctor & Gamble, Inc.*, 737 A.2d 306, 308 (Pa.Super. 1999). Given that the trial court apparently accepted the testimony that the surveillance videotape

would not include pictures of the mat in question and there is no evidence that the video was destroyed to avoid its use at trial, the trial court did not abuse its discretion when it imposed the sanction that it did. While appellant can illustrate that she was entitled to the benefit of a sanction, she does not persuade this court that the trial court abused its discretion when it imposed an adverse inference sanction.

Appellant next contends that the adverse inference combined with other evidence of record, including the testimony of appellee's own witnesses, entitled appellant to judgment as a matter of law on the issue of liability. Specifically, appellant argues that her testimony that she tripped and fell due to a defect in the mat combined with the testimony of Rogers and Rasheen Davis ("Davis"), the host for appellee, met the requirements for her cause of action.

> When reviewing the propriety of an order granting or denying judgment notwithstanding the verdict, we must determine whether there is sufficient competent evidence to sustain the verdict. *Johnson v. Hyundai Motor America*, 698 A.2d 631, 635 (Pa.Super.1997), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (1998) (citations omitted); *Rowinsky v. Sperling*, 452 Pa.Super. 215, 681 A.2d 785, 788 (1996), *appeal denied*, 547 Pa. 738, 690 A.2d 237 (1997) (quoting *Samuel Rappaport Family Partnership v. Meridian Bank*, 441 Pa.Super. 194, 657 A.2d 17, 20 (1995)). We must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Johnson*, *supra* at 635; *Rowinsky*, *supra* at 788. We apply this standard in all cases challenging the

> grant of a motion for J.N.O.V. ***Shearer v. Reed***, 286 Pa.Super. 188, 428 A.2d 635, 637 (1981).
>
> Pennsylvania law makes clear that a judgment notwithstanding the verdict is proper only in clear cases where the facts are such that no two reasonable minds could disagree that the verdict was improper. ***Johnson***, ***supra*** at 635; ***Rowinsky***, ***supra*** at 788. Questions of credibility and conflicts in evidence are for the fact-finder to resolve. ***Commonwealth, Department of Transportation v. Patton***, 546 Pa. 562, 568, 686 A.2d 1302, 1305 (1997); ***Miller v. Brass Rail Tavern, Inc.***, 702 A.2d 1072, 1076 (Pa.Super.1997) (citation omitted). This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned. ***Id.***

***Birth Center v. St. Paul Companies, Inc.***, 727 A.2d 1144, 1154-1155 (Pa.Super. 1999).

With respect to this issue, the trial court, as the trier-of-fact, concluded that appellant failed to establish that appellee had actual or constructive notice of any harmful condition in the mat:

> Notwithstanding [a]ppellant's assertions the [appellee's] witness who was present at the time of the accident, Mr. Rasheen Davis, never admitted to any knowledge of any defect in the rug. Indeed, Mr. Davis repeatedly denied under questioning from both [a]ppellant and [appellee] counsel that there was any defect in the rug which he checked every 15 minutes as part of his job. Appellant did not present sufficient credible evidence to establish that [appellee] had actual or constructive notice of a dangerous condition found in the rug. Therefore, Appellant did not meet its burden of proof and the Court found in favor of the [appellee]. As such, the Court properly adjudicated the matter.

Trial court opinion, 10/7/15 at 6-7 (citation omitted).

As finder-of-fact, the trial court has the authority to make credibility determinations. This appellate court will not disturb those credibility determinations. *Holt v. Navarro*, 932 A.2d 915, 919 (Pa.Super. 2007), *appeal denied*, 951 A.2d 1164 (Pa. 2008). Rogers testified that had this alleged defect been present, it would have been noticed by appellee's employees very quickly. (Notes of testimony, 3/12/15 at 460-461.) Rogers also testified that he never saw mats at the City Line Avenue Friday's in the condition which appellant described. (*Id.* at 444.) He also never saw the mats rise up in any direction. (*Id.* at 458.) Davis, the host on duty at the time, testified that he checked the mat at the entrance every 15 minutes or so but did not see any irregularities with it. (Notes of testimony, 3/11/15 at 323, 351-352.)

Although appellant asserts that the testimony of Rogers and Davis supports her position, it appears the reverse is true. Appellant has failed to establish that she was entitled to judgment in her favor as she failed to establish that no two reasonable minds could disagree that the verdict was improper.

Finally, appellant argues that the trial court erred when it failed to vacate the verdict for appellee as against the weight of the evidence.

> In determining whether the jury's[1] verdict was against the weight of the evidence, we note our standard of review:

---

[1] Here, there was no jury as the trial court conducted a non-jury trial.

- 14 -

> A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible . . . and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion.

*Elliott v. Ionta*, 869 A.2d 502, 504 (Pa.Super. 2005), quoting *Daniel v. William R. Drach Co., Inc.*, 849 A.2d 1265, 1267-1268 (Pa.Super. 2004) (citations omitted).

Essentially, appellant here is just making another argument that Davis' testimony, that he did not notice any defect in the mat when he checked it every 15 minutes, was not credible and that the trial court relied too heavily on this testimony. Appellant challenges the credibility determination of the fact-finder. Appellant fails to establish that the trial court's verdict shocked one's sense of justice or that the trial court committed an error of law or an abuse of discretion.

Judgment affirmed.

J. A15004/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016